IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. KELLY A. WOODRUFF, M.D. AND ROBERT WILKINSON, M.D., ET AL., | ) ) ) ) | CIVIL NO. 05-00521 JMS-LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| HAWAI`I PACIFIC HEALTH, ET AL., | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH PLAINTIFFS' DISCOVERY REQUESTS**

On November 29, 2007, Plaintiffs-Relators Kelley A. Woodruff, M.D., and Robert Wilkinson, M.D., (collectively "Plaintiffs") filed the instant Motion to Compel Defendants' Compliance with Plaintiffs' Discovery Requests ("Motion"). Defendants Hawai`i Pacific Health ("HPH"), Kapiolani Medical Center for Women and Children ("KMCWC"), and Kapiolani Medical Specialists ("KMS") (collectively "Defendants") filed their memorandum in opposition on December 21, 2007 and Plaintiffs filed their reply on December 28, 2007.  This matter came on for hearing on January 9, 2008.  Appearing on behalf of Plaintiffs were Rafael del Castillo, Esq., and Arleen Jouxon-Meyers, Esq., and appearing on behalf of Defendants were Harry Silver, Esq., and John-Anderson Meyer, Esq.  After careful consideration of the

Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiffs' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

Plaintiffs filed the Second Amended Complaint in the instant *qui tam* action on January 30, 2007,[1] alleging, *inter alia*, violations of the federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* Plaintiffs allege that Defendants submitted false claims for procedures performed by nurses who were not licensed to perform them. Defendants allegedly submitted false UB-92 forms for the reimbursement of charges associated with those procedures, as well as false cost reports based on the UB-92 forms. Codes on the forms and reports implied physicians or by licensed nurse practioners with proper physician supervision actually performed the procedures. Based on the district judge's May 21, 2007 order granting in part and denying in part Defendants' motion to dismiss the Second Amended Complaint, only Plaintiffs' claims regarding the submission of facially false claims, as reflected in the UB-92s and the cost reports, remain.

In the instant Motion, Plaintiffs seek an order compelling Defendants to produce:

---

[1] Plaintiffs filed the original complaint on August 15, 2005. On May 10, 2006, the United States filed its Notice of Election to Decline Intervention.

- Two hundred and fifty-five (255) pediatric hematology-oncology UB-92s not yet produced;
- All NICU UB-92s (none produced to date);
- Access to the original microfiche to copy or verify integrity of copies produced;
- Documents on which the all [sic] produced UB-92s were based;
- Cost reports for the fiscal years ended June 30, 1998 and June 30, 1999;
- Documents relating to the Cost Reports, trial balances, reconciliations, worksheets, drafts, amendments, revisions, and internal or external correspondence[;]
- Electronic evidence[;]
- Billing and procedure policies[;]
- Documents pertaining to identified nurses, including call schedules[;]
- Answers to First Request for Answers to Interrogatories[.]

[Motion at 2.]  Plaintiffs also seek an award of attorney's fees and costs incurred in connection with the instant Motion.

Plaintiffs served Defendants with their First Request for Production of Documents ("First RPD") on August 2, 2006. This Court stayed discovery pending resolution of Defendants' motions to dismiss various versions of the complaint.  On May 22, 2007, Plaintiffs temporarily withdrew some of the requests in the First RPD in an effort to facilitate the discovery process.  In their May 25, 2007 response, Defendants objected to every item in the amended First RPD.  Plaintiffs served Defendants with a First Request for Answers to Interrogatories ("First RAI") on June 4, 2007.  The purpose of the First RAI was to assist in forensic electronic discovery because Plaintiffs were suspicious of Defendants' claim that they no longer had any UB-92s from the

3

relevant period.

Prior to the August 1, 2007 discovery conference, Defendants denied that they possessed any UB-92s.  Plaintiffs served Defendants with a Request to Inspect Premises on July 23, 2007 and a Notice of Rule 30(b)(6) Oral Deposition of Party on July 24, 2007.  Defendants responded to the First RAI on July 31, 2007.  According to Plaintiffs "[o]n August 1, faced with the prospect of an inspection of their computers by a Court-appointed forensic consultant, Defendants finally admitted that they had the documents and electronic information all along, but they successfully petitioned the Court for 'rolling discovery.'" [Mem. in Supp. of Motion at 3-4.]  Defendants' counsel, Harry Silver, Esq., represented that the microfilm records of the UB-92s were stored offsite with a third party vendor.

On August 1, 2007, this Court issued an EO requiring Defendants to produce "all UB92 forms submitted to medicaid and filed in 2001 that relate to dates in Complaint."  On August 13, 2007, Defendants produced five UB-92s and certified in writing that they constituted all of the known UB-92s for the neonatal intensive care unit ("NICU") and pediatric hematology-oncology ("hem-onc") departments.  On August 10, 2007, defense counsel, Kenneth Robbins, Esq., informed Plaintiffs' counsel that Mr. Silver's representation about the offsite vendor was mistaken.  Mr. Robbins asserted that the UB-92s did not exist,

either onsite or offsite.  The five that they produced were re-created, pdf format copies which Mr. Silver's office received in response to a request to HPH.  Mr. Silver mistakenly assumed that the copies represented originals stored offsite.

Deposition testimony later revealed that Defendants had microfiche records of the UB-92s in their main office all along. Defendants eventually produced additional claims for 2001.  [Exh. 2A to Motion (table).]  According to Plaintiffs, Defendants have only produced two-thirds of the identified hem-onc UB-92s and less than thirty percent of the total UB-92s.

Plaintiffs requested a court order requiring Defendants to pay for a forensic analysis of their computer systems and files because of their failure to comply with the August 1 EO. The Court ordered the parties to develop a discovery plan for the UB-92s and UB-92 information, but they were unable to reach an agreement.  At the August 30, 2007 discovery conference, Mr. Silver admitted that Defendants possessed microfiche records of all UB-92s filed since 1997.  That day, this Court issued an EO stating, in pertinent part: "Defendants have located 1997-2001 microfiche and electronic data that was sent to Medicaid. Defendants' expert to receive it by September 13, 2007.  They will review and then start to produce to Plaintiffs from September 17, 2007."

Plaintiffs have compiled a list of 373 hem-onc UB-92

encounters allegedly involving false claims submitted between September 1997 and June 30, 2001.  [Exh. 2 to Motion.] Defendants have produced a total of 121 hem-onc UB-92s in various formats, including pdf file forms and copies from microfiche. Defendants have refused to produce: any UB-92s from the NICU; supporting documentation showing that the services claimed in the UB-92s were actually performed;[2] and electronically stored UB-92 data or paper reproductions of electronic forms produced, which Plaintiffs seek to verify the versions Defendants produced. Defendants have also refused to allow Plaintiffs to inspect the original microfiche records.

　　　According to Plaintiffs, the program which Defendants used to print the pdf forms is a claims editor program, which can change the content of the claim forms.  Plaintiffs point out that there is no record of changes to the forms because the program does not create an audit trail.  Plaintiffs therefore allege that Defendants' process for reproducing the pdf UB-92 forms is not trustworthy.

　　　Plaintiffs assert that the UB-92s provided thus far contain a diverse group of facially false claims and they argue that they have a reasonable expectation that they will find more facially false claims in the UB-92s that Defendants are

_____

[2] Plaintiffs acknowledge that they have received some documents in the state case and they do not seek duplicative production.

withholding.  Plaintiffs also allege that Defendants' production
of their cost reports and cost report information is deficient.
Defendants produced reports for the fiscal years ending June 30,
2000 and June 30, 2001, but they refuse to produce reports for
the years ending June 30, 1998 and June 30, 1999.  Defendants
also refuse to produce the worksheets and other documentation
used to prepare the reports, nor will they produce records,
correspondence, or other documents pertaining to the allocation
of expenses for the NICU or hem-onc department.

Plaintiffs contend that the UB-92s and their associated
documents and the cost reports and their associated documents are
relevant to the existence of facially false claims and to the
amount of damages and penalties that may be assessed.  Defendants
have not asserted that these documents are privileged.
Plaintiffs argue that their discovery requests are not
unreasonably cumulative or duplicative because each cost report
and UB-92 is unique.  They also argue that there is no less
burdensome way for Plaintiffs to obtain these documents because
Defendants are the only source.

In addition, Plaintiffs claim that the manner in which
Defendants produced the 121 UB-92s disclosed thus far does not
provide sufficient assurances that the versions produced are
identical to versions originally submitted to Medicaid and other
groups.  Plaintiffs contend that Defendants are required to

7

produce hard copies of the claims, as well as the electronic files.  Plaintiffs apparently wish to confirm the integrity of the electronic copies by using a "hashum".  Plaintiffs also argue that the copies from the microfiche are not trustworthy because the claims software may have made undetectable edits.

Finally, Plaintiffs seek an award of attorney's fees and costs incurred in connection with the Motion pursuant to Federal Rule of Civil Procedure 37.  Plaintiffs argue that they made good faith attempts to obtain the discovery without filing a motion and that Defendants had no justification for their refusal to comply with Plaintiffs' discovery requests.  Defendants' actions are evidence of an intent to frustrate discovery and a disregard for their obligations under the applicable rules. Plaintiffs also argue that the delay in receiving the discovery has been highly prejudicial to them.

In Defendants' memorandum in opposition, they state that they have made every reasonable effort to respond to all of Plaintiffs' discovery requests in a timely fashion.  Beginning in their First Amended Complaint, Plaintiffs included all of the procedures allegedly performed by nurse D.F. on specific patients, with the dates of the procedures as listed in her log book.  Defendants' understanding has always been that these were the only procedures at issue in this case and they argue that their understanding is supported by this Court's August 1, 2007

EO requiring Defendants to produce "all UB92 forms submitted to medicaid and filed in 2001 that relate to dates in Complaint." Defendants argue that they are not required to produce UB-92s which: are not referenced in the complaint; or were not submitted to Medicaid.  Defendants state that many of the encounters listed in Exhibit 2 to the Motion were not included in the complaint or in the exhibits to the complaint.  Further, Plaintiff never provided Defendants with the list in Exhibit 2 prior to filing the instant Motion.

Defendants made a timely search for the discoverable UB-92s after the district judge's ruling on the motion to dismiss the Second Amended Complaint.  When they produced the five UB-92s on August 10, 2007, Defendants informed Plaintiffs that those were only the only ones identified to date.  At the parties' August 22, 2007 meeting, Defendants stated that they were searching for UB-92s stored electronically or on microfiche, but they needed more time to do so.  On August 24, 2007, Defendants' counsel sent Plaintiffs' counsel an anticipated schedule for production of the UB-92s.  At the August 30, 2007 discovery conference, this Court ordered rolling production beginning September 17, 2007, and Defendants complied, producing additional UB-92s on September 17, October 2, and October 11.  Defendants state that they have produced all the UB-92s within their possession which were submitted to Medicaid and which relate to

the dates referenced in the Second Amended Complaint and exhibits thereto.  Defendants have also produced the 2000 and 2001 cost reports and Medicaid-ECR files and provided two witnesses for Rule 30(b)(6) depositions regarding the costs reports and the UB-92 data.  According to Defendants, these depositions provided answers to Plaintiffs' interrogatories.

Defendants, however, only produced documents relating to claims submitted on or after August 15, 1999, six years before the filing of the original complaint.  They argue that the remainder of the claims are barred by the FCA's six-year statute of limitations.  Defendants argue that the district judge's ruling on their pending motion for summary judgment will resolve the issue whether Plaintiffs may rely on claims submitted before August 15, 1999.  Defendants urge this Court to stay discovery of the pre-August 15, 1999 data until the district judge rules on the motion for summary judgment.

Defendants submit that they are not required to produce any UB-92s for the NICU claims because, as discussed in the motion for summary judgment, Plaintiffs' claims concerning the NICU are only based on information and belief.  Defendants argue that this is not enough to maintain a claim under the FCA.  The Second Amended Complaint states that, on information and belief, Plaintiffs believe that nurses R.S.T. and M.Z. kept records of procedures they performed similar to D.F.'s log.  Plaintiffs

10

never produced such records.  Defendants therefore contend that Plaintiffs are not entitled to discovery of UB-92s for procedures performed by R.S.T. and M.Z.  In the alternative, Defendants argue that this Court should defer ruling on this request until the district judge rules on the motion for summary judgment.

Defendants also assert that there is no reason for Plaintiffs to question the integrity of Defendants' production. Where there is no evidence of impropriety, courts have refused to give the requesting party unfettered access to the responding party's computer databases.  Further, the Advisory Committee's Notes to Federal Rule of Civil Procedure 34 states that the opportunity to test materials does not create a routine right of access to the opposing party's electronic information system. Defendants submitted a declaration from Colbert Seto, HPH's Director of Information Systems, which addressed the process for creating, submitting, storing, and retrieving UB-92 data. Plaintiffs mischaracterize Seto's testimony as implying that Defendants' claims editing program may have allowed them to change the contents of the UB-92s.  Defendants argue that there is no indication that they used the claims editor program to alter any of the UB-92 data or that they altered the microfiche. Similarly, the mere fact that the claims editing program does not create an audit trail does not constitute evidence of tampering. Further, Plaintiffs can confirm the accuracy of the UB-92s by

11

comparing them to the records that Plaintiffs subpoenaed from MedQUEST.

Defendants also argue that Plaintiffs have sufficient UB-92s to proceed on the issue of liability.  Any additional UB-92s would only be relevant to the issue of damages.  Further, Plaintiffs are not entitled to the 1998 and 1999 cost reports because they fall outside of the statute of limitations period. The 1998 and 1999 cost reports are also only relevant to damages, and Defendants ask the Court to defer ruling on the discovery of the 1998 and 1999 cost reports until the district judge rules on the motion for summary judgment.  In addition, Defendants assert that, because the Court ordered it to produce documents submitted to Medicaid, they are not required to produce internal documentation for the cost reports.

Finally, Defendants contend that Plaintiffs are not entitled to attorney's fees and costs because Defendants have produced all of the documents this Court ordered them to produce. Defendants have a legitimate basis for their refusal to produce UB-92s for claims that are either outside the limitations period or are only based on information and belief.

In their reply, Plaintiffs argue that, because the original documents are in Defendants' possession and control and are obtainable, reproductions will not be admissible under the Federal Rules of Evidence.  They also argue that they are not

12

seeking unfettered access to Defendants' databases.  They are
seeking archive data that Defendants turned over to a third party
vendor for storage.  Plaintiffs are concerned about the integrity
of the documents because they need to prove the contents of the
documents, not just their existence.  Further, Defendants
previously denied that they had any UB-92s and they refuse to
provide assurances that the UB-92s they produced are accurate
reproductions.

Plaintiffs argue that the Court's August 1, 2007 EO did
not limit Defendants' production to UB-92s for claims which were
submitted to Medicaid and are referenced in the complaint.  Those
were merely part of the first group of documents to be produced,
with more to follow thereafter.  In addition, contrary to
Defendants' claim, Plaintiffs provided them with a copy of the
Exhibit 2 list in September 2006.  Plaintiffs argue that this
Court ordered Defendants to produce all of the Exhibit 2 claims
data in rolling discovery.  They emphasize that the district
judge has never ruled on the applicability of the six-year
statute of limitations.

Plaintiffs argue that the additional UB-92s do not
relate only to damages.  Each claim is distinct and the content
of one does not prove the content of another.  In Defendants'
motion for summary judgment, they assert that they did not cheat
on the claims they produced, which raises the implication that

13

they may have cheated on the claims they did not produce. Plaintiffs also clarify that their subpoena to MedQUEST was for UB-92 data for the NICU, not the hem-onc department.  Thus, they cannot confirm the accuracy of the hem-onc UB-92s that Defendants produced.

As to the NICU claims, Plaintiffs argue that they were not required to include records of the improper NICU procedures in their complaint.  They contend that Defendants' exclusion of the NICU claims is an attempt to relitigate the district judge's prior ruling that Plaintiffs stated a claim for facially false UB-92s.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides:

Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).[3]

---

[3] Rule 26(b)(2)(C) states:
    On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed
                                            (continued...)

Relevancy, for purposes of Rule 26(b),[4] is a broad concept that is construed liberally. "Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues." <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (citing <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)). Therefore, "discovery should be allowed unless the information sought has no conceivable bearing on the case." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (citation omitted).

## I.   <u>Statute of limitations</u>

Defendants argue that the UB-92s for allegedly false

---

[3](...continued)
    by these rules or by local rule if it determines that:
        (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
        (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
        (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

[4] Prior to the 2007 amendment, the general description of the scope of discovery appeared in subsection (b). "The language of Rule 26 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Fed. R. Civ. P. 26 advisory committee's note (2007 Amendment).

15

claims submitted beyond the statute of limitations period are not discoverable.  Plaintiffs filed the original complaint in this action on August 15, 2005.  An action under the FCA may not be brought:

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
> whichever occurs last.

31 U.S.C. § 3731(b).  Defendants contend that, pursuant to § 3731(b)(1), Plaintiffs cannot base their action on allegedly false claims submitted prior to August 15, 1999 and that such claims are therefore not discoverable.

Some courts have interpreted § 3731(b)(2) as applying only in actions in which the government intervenes, see United States ex rel. Finney v. Nextwave Telecom, inc., 337 B.R. 479, 486 (S.D.N.Y. 2006) (citing cases).  The Ninth Circuit, however, has held that § 3731(b)(2) also applies to actions maintained solely by a qui tam relator.  See United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1216 (9th Cir. 1996), vacated on other grounds, 521 U.S. 1101 (1997).  In order to invoke § 3731(b)(2), a plaintiff must show that the defendant fraudulently concealed a false claim and that the plaintiff acted within three

years of either: 1) learning of the material facts relating to the false claim; or 2) the time in which the government official responsible for that area knew or should have known that the defendant submitted false claims.  See United States ex rel. Sanders v. E. Alabama Heathcare Auth., 953 F. Supp. 1404, 1413 (M.D. Ala. 1996).  Thus, there are factual situations under which Plaintiffs may bring *qui tam* claims based on allegedly false claims filed up to ten years prior to the filing of the original complaint.

This Court therefore finds that Plaintiffs are entitled to discovery of the UB-92s and cost reports concerning allegedly false claims submitted to government funded programs on August 15, 1995 or later.  The Court emphasizes that this is not a ruling with regard to admissibility.  If Plaintiffs are unable to prove the requirements of § 3731(b)(2), they may not prevail as to any allegedly false claims submitted before August 15, 1999.  See id. ("Final determinations on the legal sufficiency of the Plaintiffs' claims vis a vis the statute of limitations will be made once discovery has been undertaken.").

## II.  NICU UB-92s

Defendants withheld all UB-92s for the NICU because the allegations in the Second Amended Complaint regarding facially false claims for NICU procedures are only based on information and belief.  The Second Amended Complaint does not include a

17

nurse's log for NICU procedures similar to D.F.'s log for hem-onc procedures.

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff must plead fraud with particularity.  Where the plaintiff alleges that the fraud involved multiple incidents occurring over a multi-year period, he need not "allege, in detail, all facts supporting each and every instance[.]"  United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001) (affirming dismissal of first amended complaint which was not "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong" (citation and quotation marks omitted)).  Thus, the lack of a nurse's log for the NICU does not preclude Plaintiffs from obtaining discovery regarding NICU procedures.  More importantly, the district judge did not limit his ruling that Plaintiffs sufficiently stated a claim based on facially false UB-92s and cost reports to facially false hem-onc claims.  This Court therefore finds that Plaintiffs are entitled to discovery of the UB-92s which reflect claims submitted during the relevant time period to government funded programs for NICU procedures.  The Court emphasizes that this is not a ruling with regard to the admissibility of the NICU UB-92s.

Plaintiffs' Motion is GRANTED with regard to: the UB-92s for the NICU and the hem-onc department which reflect allegedly false claims submitted to government funded programs on or after August 15, 1995; and the cost reports associated therewith.  The Court ORDERS Defendants to produce such documents, to the extent that they are responsive to Plaintiffs' discovery requests, by no later than January 31, 2008.

### III. __Nurses' Documentation__

Plaintiffs' amended First RPD included the following request:

> 7.    Any and all __documents__ dated during the Primary Violation Period concerning or __relating to the Identified Nurses__ including but not limited to collaborative practice agreements, your personnel files for each of the Identified Nurses, and any personal logs or diaries any of Identified Nurses created or maintained concerning or relating to procedures or services provided or dated during the Primary Violation Period.

[Mem. in Supp. of Motion at 9 (emphases in original).]  The Second Amended Complaint identifies certain procedures that nurse D.F. allegedly performed "on pediatric and neonatal hematology-oncology patients", [Second Amended Complaint at ¶ 32.a.,] which she was not licensed to perform.  The Second Amended Complaint includes D.F.'s personal log reflecting the procedures she performed.  [Exh. 2 to Second Amended Complaint.]  The Second Amended Complaint also identifies certain procedures that nurses R.S.T. and M.Z. allegedly performed during the identified time

period "on newborn babies in the delivery room and premature

infants and distressed newborns in the hospital newborn delivery

rooms and the neonatal intensive care unit", [Second Amended

Complaint at ¶ 32.b.,] which they were not licensed to perform.

As noted previously, the Second Amended Complaint does not

include a nurse's log for NICU procedures similar to D.F.'s log.

This Court therefore finds that documents in

Defendants' personnel files which indicate that nurses D.F.,

R.S.T., or M.Z. (collectively "Identified Nurses") performed the

procedures identified in the Second Amended Complaint, during the

period identified therein, are relevant to a claim or defense in

this action and GRANTS the Motion as to these documents.

Plaintiffs' request for the Identified Nurses' records is DENIED

in all other respects.  The Court notes that, although the

Identified Nurses' personal logs or diaries are also relevant to

a claim or defense in this action, there is no evidence that such

personal logs or diaries are in Defendants' possession, custody,

or control.

This Court ORDERS Defendants to search the Identified

Nurses' personnel files and produce any documents which indicate

that the Identified Nurses performed the procedures identified in

the Second Amended Complaint on the dates referenced therein.

Defendants should redact the Identified Nurses' personal

information and the patients' personal information, except for

their initials.  Defendants shall produce such documents by no later than **February 7, 2008**.

## IV.  Electronic Discovery

Plaintiffs have also requested access to the raw data from the UB-92s, including access to records stored on microfiche.  Plaintiffs argue that this is necessary to ensure the integrity of the reproductions which Defendants have produced so that the copies can be deemed admissible as duplicates under Federal Rules of Evidence 1001(4) and 1003.

The Court finds that it does not have sufficient information to rule upon this request at this time.  The Court therefore ORDERS the parties to submit supplemental briefing regarding whether Defendants must produce the raw data from the UB-92s, whether stored on microfiche or in another format, in response to Plaintiffs' request for electronic discovery. Plaintiffs shall submit their supplemental brief by **Tuesday, January 22, 2008**, and Defendants shall submit their supplemental brief by **Tuesday, January 29, 2008**.  Each supplemental brief shall be no more than ten pages in length.

Plaintiffs' requests to compel production are DENIED in all other respects not specifically addressed in this order.

## IV.  Attorney's Fees and Costs

Finally, Plaintiffs ask the Court to award them the attorney's fees and costs they incurred in connection with this

Motion.  Federal Rule of Civil Procedure 37(a)(5)(C) provides

that: "If the motion [to compel] is granted in part and denied in

part, the court may issue any protective order authorized under

Rule 26(c) and may, after giving an opportunity to be heard,

apportion the reasonable expenses for the motion."  This Court

finds that Defendants attempted to respond to Plaintiffs'

discovery requests and that they had an arguable, although

ultimately erroneous, basis for withholding the discovery this

Court now orders them to produce.  The Court therefore DENIES

Plaintiffs' request for attorney's fees and costs associated with

the instant Motion.

### CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion to

Compel Defendants' Compliance with Plaintiffs' Discovery

Requests, filed November 29, 2007, is HEREBY GRANTED IN PART AND

DENIED IN PART.  The Court GRANTS the Motion insofar as

Defendants are ORDERED to produce the following documents, to the

extent that they are responsive to Plaintiffs' discovery

requests: 1) UB-92s for the NICU and hem-onc department which

reflect allegedly false claims submitted to government funded

programs on or after August 15, 1995; 2) cost reports reflecting

the alleged false claims; and 3) any documents from the

Identified Nurses' personnel files which indicate that the

Identified Nurses performed the procedures identified in the

Second Amended Complaint on the dates referenced therein. Defendants shall produce the UB-92s and cost reports by no later than **January 31, 2008** and Defendants shall produce the documents from the Identified Nurses' personnel files by no later than **February 7, 2008**.

Further, the Court ORDERS the parties to submit supplemental briefs, no more than ten pages in length, regarding whether Defendants must produce the raw data from the UB-92s, whether stored on microfiche or in another format, in response to Plaintiffs' request for electronic discovery.  Plaintiffs shall submit their supplemental brief by **Tuesday, January 22, 2008**, and Defendants shall submit their supplemental brief by **Tuesday, January 29, 2008**.

The Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, January 22, 2008.



       /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**UNITED STATES OF AMERICA EX REL. KELLY A. WOODRUFF, M.D., ET AL. V. HAWAI`I PACIFIC HEALTH, ET AL; CIVIL NO. 05-00521 JMS-LEK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH PLAINTIFFS' DISCOVERY REQUESTS**