IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. KELLY A. WOODRUFF, M.D. AND ROBERT WILKINSON, M.D., ET AL., | ) ) ) ) | CIVIL NO. 05-00521 JMS-LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| HAWAI`I PACIFIC HEALTH, ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**REPORT OF SPECIAL MASTER ON DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Before the Court, pursuant to a designation by United
States District Judge J. Michael Seabright, is the Motion for
Attorneys' Fees and Expenses ("Motion"), filed on May 16, 2008 by
Defendants Hawai`i Pacific Health, Kapi`olani Medical Center for
Women and Children, and Kapi`olani Medical Specialists
(collectively "Defendants").[1]  Defendants request an award of
$1,267,452.55 in attorneys' fees and $80,352.83 in expenses, for
a total award of $1,347,805.38.  Plaintiffs Kelley A. Woodruff,
M.D., and Robert Wilkinson, M.D. (collectively "Plaintiffs"),
filed their memorandum in opposition on June 16, 2008,[2] and

---

[1] Defendants filed their supporting documentation on May 23,
2008.

[2] Plaintiffs filed an errata to their memorandum in
opposition on June 17, 2008.

Defendants filed their reply on June 30, 2008.[3]  The Court finds
this matter suitable for disposition without a hearing pursuant
to Rule LR7.2(d) of the Local Rules of Practice of the United
States District Court for the District of Hawaii ("Local Rules").
After reviewing the parties' submissions and the relevant legal
authority, the Court FINDS and RECOMMENDS that Defendants' Motion
be DENIED.

### BACKGROUND

On August 15, 2005, Plaintiffs filed the original
Complaint in the instant *qui tam* action pursuant to the federal
False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., and the
state False Claims Act, Haw. Rev. Stat. § 661-21, et seq.
Plaintiffs alleged that Defendants made false claims for payment
to Medicare and Medicaid and made and used false records to
support their false claims.  Plaintiffs alleged that this
violated both the federal and state False Claims Acts and that
Defendants' termination of Plaintiffs' employment was in
retaliation for Plaintiffs' response to Defendants' submission of
false claims.  Plaintiffs sought civil penalties on behalf of the
United States and the State of Hawaii of $5,000 to $10,000 per
violation plus three times the damages sustained, and attorneys'
fees and expenses.

On May 10, 2006, the United States filed its Notice of

---

[3] Defendants filed an errata to their reply on July 1, 2008.

Election to Decline Intervention and the district judge order the Complaint unsealed.  On October 3, 2006, the district judge issued an Order Granting Defendants' Motion to Dismiss and Granting Plaintiffs' Motion for Leave to Amend ("First Dismissal Order").  The district judge ruled that Plaintiffs failed to plead fraud with the required particularity.  The First Dismissal Order noted that Plaintiffs' memorandum in opposition to the motion to dismiss clarified Plaintiffs' allegations: the allegedly false claims were for charges associated with procedures nurses who were unsupervised and unlicensed.  The Complaint, however, did not sufficiently articulate the claims.

Plaintiffs filed their First Amended Complaint on October 16, 2006.  On February 5, 2007, the district judge issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss First Amended Complaint ("Second Dismissal Order"), which cited the reasons stated on the record during the January 16, 2007 hearing on Defendants' Motion to Dismiss First Amended Complaint.  The Second Dismissal Order stated that the First Amended Complaint did not state the basis for the allegations of false claims with sufficient particularity.  For example, Plaintiffs argued that Defendants violated a federal regulation requiring hospitals to certify that their personnel are properly licensed, but Plaintiffs' counsel admitted during the hearing that they did not cite the regulation in the First

3

Amended Complaint.  [Trans. 1/16/07, filed 1/25/07 (dkt. no. 65), at 18-19.]  The district judge granted Plaintiffs leave to file a Second Amended Complaint.

Plaintiffs filed the Second Amended Complaint on January 30, 2007.  On May 21, 2007, the district judge issued an Order Denying in Part and Granting in Part Defendants' Motion to Dismiss Second Amended Complaint ("Third Dismissal Order").  The district judge ruled that, assuming the truth of the factual allegations in the Second Amended Complaint, Plaintiffs stated a claim based on the submission of facially false UB-92 claims and cost reports.  The district judge dismissed Plaintiffs' claims based on the false certification and promissory fraud theories of liability.

On May 2, 2008, final judgement was entered in Defendants' favor pursuant to the district judge's Order (1) Granting Plaintiffs' Ex Parte Motion to Strike Exhibit "Q" to Defendants' Reply, and (2) Granting Defendants' Motion for Summary Judgment ("Summary Judgment Order"), which was filed on the same day.  The Summary Judgment Order noted that Defendants produced unrebutted evidence that Diane Fochtman, Michelle Zippay, and Randy Taniguchi were qualified to perform the procedures at issue because they were properly licensed registered nurses, as well as board-certified nurse practitioners.  Plaintiffs failed to rebut Defendants' showing

4

that there is no requirement in Hawaii that physicians supervise the procedures at issue.  The district judge also ruled that there was no basis to conclude that the procedures at issue were "physician-only" procedures, and the UB-92 claims did not imply that a physician had performed the procedures that the nurse practitioner performed.

To the extent that the UB-92s were not false claims, Plaintiffs' claims based on the certification and submission of cost reports based on the UB-92s and Plaintiffs' conspiracy claim also failed.  Finally, the district judge ruled that Plaintiffs' retaliation claim was barred by the statute of limitations.

In the instant Motion, Defendants argue that they are entitled to attorney's fees and expenses pursuant to 31 U.S.C. § 3730(d)(4) because Plaintiffs' case was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.  Defendants argue that the action was frivolous because Plaintiffs brought it without investigating the basis for their allegations and because they could not articulate a basis for their false claims.  They contend that even a cursory examination of Hawaii's statutes and regulations concerning nurse practitioners would have indicated that the nurses in question were properly licensed.  Defendants also allege that Plaintiffs had no basis for their claim that the contested procedures were "physician-only" procedures.  Dr. Wilkinson admitted that he did

not have personal knowledge that Ms. Fochtman or any other nurses performed "physician-only" procedures and that he relied on what Dr. Woodruff and counsel told him.  Dr. Woodruff, however, admitted that she did not even read the statute purportedly governing licensing of nurse practitioners.

Defendants also argue that the action was clearly vexatious and brought with an intent to harass because Plaintiffs appear to be seeking revenge against Defendants.  Dr. Wilkinson was forced to resign and Dr. Woodruff was terminated for circumventing Defendants' prohibition on billing Medicaid on Form 1500 for professional fees for services performed by nurse practitioners.  In Defendants' view, the instant action is essentially an effort to prove that, if Plaintiffs were precluded from billing for their professional fees when nurse practitioners performed procedures, the hospital should also be prohibited from billing for their costs for those procedures.  According to Defendants, Plaintiffs knew or should have known the distinction between billing for professional fees on a Form 1500 and billing for the hospital's overhead charges on a UB-92.

Defendants also note that Hawaii Children's Blood and Cancer Group ("HCBCG"), a medical group consisting of Dr. Woodruff and Dr. Wilkinson, initiated a state court action which was summarily adjudicated in Defendants' favor.  HCBCG also filed a federal antitrust action against Defendants, which

Defendants argue is based upon the same facts as the state court action.   Defendants assert that Plaintiffs failed to articulate the basis for their claims throughout the case, gave contradictory statements and testimony, and continually charged their theory of liability.   Defendants argue that Plaintiffs' conduct indicates that they brought this action to vex and harass Defendants.

Finally, Defendants argue that their attorney's fees and expenses were reasonably and necessarily incurred.

In their memorandum in opposition, Plaintiffs argue that an award of attorney's fees and expenses is inappropriate because the district judge ruled that they stated a prima facie case for facially false claims.   According to Plaintiffs, the Ninth Circuit Court of Appeals has held that, once a court finds that the plaintiff alleged a prima facie case, it cannot be found to be frivolous or unreasonable.   Plaintiffs argue that the focus should not be upon what the ultimate outcome of the case was, but upon whether there were sufficient factual and legal bases for the claims.   Further, even looking at the Motion for Summary Judgment, the district judge took forty-five days after the hearing to issue a thirty-six page order, which indicates that the issues addressed were close and were not frivolous. Plaintiffs argue that Defendants' choice of a high-priced Washington D.C. law firm is also inconsistent with their claim

7

that the case was frivolous.   Plaintiffs argue that an award of attorney's fees is only appropriate in rare and exceptional case and the instant case is distinguishable from other cases where courts have awarded attorney's fees based on a finding of frivolousness.

Plaintiffs argue that there was factual support for their claims that the nurses were not properly licensed to perform the contested procedures unsupervised.  Defendants' compliance expert, Dennis Warren, Esq., and in-house counsel, Sharon On Leng, Esq., certified to in Defendants' Voluntary Disclosure Submission to the Office of Inspector General ("Voluntary Disclosure")[4] that Ms. Fochtman was not properly licensed and that they had refunded 101 claims based on that opinion.  Plaintiffs argue that it was not obvious that the district judge would ultimately reject the opinion of Defendants' attorneys in favor of the opinion of a nurse practitioner and a nurse practitioners' journal.  Plaintiffs argue that they also relied on the opinion of its retained expert, Claudia Birkenshaw, MSA, and Patrick Brennan and Richard Banner, M.D., who opined that nurse practitioner recognition was a prerequisite to submitting claims.  Plaintiffs also had the prior statements of

---

[4] The September 2001 Kapi'olani Health Corporate Integrity Agreement - Voluntary Disclosure Submission - KMCWC Hematology/Oncology Department is attached as Exhibit G to Defendants' Concise Statement of Facts, filed 11/16/07 (dkt. no. 120-12).

Lynette Honbo, M.D., the former Med-Quest Medical Director, but they were not able to depose her before the hearing on the Motion for Summary Judgment and therefore could not rely upon her opinion.

Plaintiffs also emphasize that, although the district judge stated that some of Plaintiffs' positions lacked merit, the district judge never characterized any of their positions as frivolous. For example, the district judge never found that Plaintiffs' argument that the contested procedures were "physician-only" was totally meritless; he only found that Plaintiffs' proof on this issue was insufficient. Further, the fact that Dr. Wilkinson testified during his deposition that he did not know if Ms. Fochtman ever performed "physician-only" procedures does not render Plaintiffs' case frivolous because the nurses admitted to performing the procedures and Defendants have not pointed to any legal authority for the position that FCA claims cannot be based on personal belief or on the advice of counsel.

Plaintiffs also argue that Defendants have not established that Plaintiffs brought the case for an improper purpose. Defendants have not identified any extra-judicial conduct supporting their claim that Plaintiffs had an alternative agenda that was the primary purpose for bringing this action. Plaintiffs also argue that Defendants' claim that the Complaint

9

was difficult to understand is not grounds for finding that the case was clearly vexatious.

Further, assuming *arguendo* that Defendants' are entitled to attorney's fees, Defendants have not established that local counsel was unable or unwilling to handle the case.   Thus, Defendants are limited to Hawaii hourly rates for their Washington D.C. counsel.   Plaintiffs also raise objections to specific items in the request for fees and expenses.

In their reply, Defendants argue that the instant case does present rare and special circumstances which warrant an award of attorneys' fees and expenses under the FCA.   Defendants emphasize that Plaintiffs had to amend their Complaint twice because they failed to comply with Fed. R. Civ. P. 9(b) and failed to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants argue that the district judge ultimately ruled that Plaintiffs failed to state a claim as to their primary allegations: false certification and promissory fraud.   The fact that Plaintiffs stated a claim for facially false claims does not preclude an award of attorney's fees, particular those associated with the first two motions to dismiss.   The district judge's ruling that Plaintiffs stated a prima facie case for one claim is just one factor to consider in determining whether the action was frivolous.   Defendants emphasize that, at the motion to dismiss stage, the district judge was required to accept Plaintiffs'

factual allegations as true.  Had Plaintiffs investigated the nurses' license status, they would have learned that Ms. Fochtman, Ms. Zippay, and Mr. Taniguchi were licensed registered nurses who held national certifications.  Thus, Plaintiffs' case was frivolous because their claim that the nurses were unlicensed did not have any support in fact.

Defendants note that Plaintiffs rely on the Voluntary Disclosure's statement that one of Defendants' nurses was not properly licensed.  The Voluntary Disclosure, however, does not cite a basis for this opinion and the Voluntary Disclosure addressed the fact that Plaintiffs improperly billed Medicare for procedures they did not perform.  The nurse's license status was irrelevant to that issue.  Further, to the extent that Plaintiffs' counsel were responsible for Plaintiffs' inaccurate factual allegations and failure to investigate, counsel should be held liable either under Federal Rule of Civil Procedure 11 and/or 28 U.S.C. § 1927.

Defendants reiterate that Plaintiffs blur the distinction between HCFA 1500 forms and UB-92s.  Further, Plaintiffs mischaracterize that the testimony of the AlohaCare representatives about the significance of UB-92 fields 82 and 83. Had Plaintiffs read the Hawaii UB-92 Provider Manual, they would have known that definition of the physician identification field does not require that the physician be the one who performed the

11

service.  Defendants also argue that Plaintiffs changed the underlying theory of their case from focusing exclusively on the fact that the nurses were unlicensed to alleging that they were not properly supervised.  The Second Amended Complaint, however, raises only the licensing issue.  Further, Plaintiffs failed to provide any support for their claim that supervision was required for the contested procedures.  The instant action was therefore clearly frivolous.

With regard to their argument that Plaintiffs brought the action primarily to vex and harass Defendants, they argue that courts in other cases have found two prior actions to be a litigious history indicative of and ultimate goal to vex and harass.  Defendants note that Dr. Woodruff and HCBCG used discovery obtained in this case in an unsuccessful attempt to seek reconsideration of summary judgment rulings made in the state court action.  Defendants therefore argue that the instant case was vexatious and brought primarily to harass them.

Finally, Defendants argue that their requested attorney's fees and expenses are reasonable.  They argue that hiring mainland counsel was necessary because this is a specialized field of law and the Patton Boggs law firm has extensive experience in *qui tam* actions.  Defendants allege that there are no attorneys with comparable expertise in Hawaii.  If the Court is not inclined to apply out-of-forum rates, Defendants

argue that the Court should apply reasonable hourly rates for Hawaii attorneys who specialize in FCA cases.

## <u>DISCUSSION</u>

A prevailing defendant in an FCA action may be entitled to attorney's fees pursuant to 31 U.S.C. § 3730(d)(4), which states:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

Although a court may award attorneys' fees if any of the three conditions are present, <u>see</u> <u>Mikes v. Straus</u>, 274 F.3d 687, 704-05 (2d Cir. 2001), the criteria are related and evidence regarding frivolousness will also be relevant to improper purpose.  <u>See United States ex rel. Haight v. Catholic Healthcare W.</u>, No. CV-01-2253-PHX-FJM, 2008 WL 607150, at *1 (D. Ariz. Feb. 29, 2008) (citing <u>Townsend v. Holman Consulting Corp.</u>, 929 F.2d 1358, 1362 (9th Cir. 1990) (discussing these factors in the context of Rule 11 sanctions)).  The FCA standard is similar to standard for awarding attorney's fees to a prevailing defendant pursuant to 42 U.S.C. § 1988, and case law applying § 1988 is instructive in determining whether award attorney's fees to a prevailing defendant under the FCA.  <u>See</u> <u>Pfingston v. Ronan Eng'g Co.</u>, 284 F.3d 999, 1005-06 & n.4 (9th Cir. 2002).

13

The Ninth Circuit has stated that "[a]n action is 'clearly frivolous' when the result is obvious or the appellant's arguments of error are wholly without merit[,]" and "'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." <u>Id.</u> at 1006 (citations and some quotation marks omitted).  Other courts, however, have stated that a finding of vexatiousness does not require subjective bad faith, but a finding of a purpose to harass suggests bad faith.  See <u>United States ex rel. Montgomery v. St. Edward Mercy Med. Ctr.</u>, No. 4:05-CV-00899 GTE, 2008 WL 110858, at *5 (E.D. Ark. Jan. 8, 2008) (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978)).[5]  A court should only award attorney's fees under the FCA under "rare and special circumstances[,]" and, if the court does award fees, it must make detailed findings in support of any award.  See <u>Pfingston</u>, 284 F.3d at 1006-07.

## I.    <u>Clearly Frivolous</u>

Plaintiffs argue that an award of attorney's fees is not appropriate because the district judge ruled that Plaintiffs stated a prima facie case for facially false claims and the Ninth

---

[5] The Court notes that case law applying § 3730(d)(4) is limited, and the number of published cases on the issues is fewer still.  The Court has therefore looked to some unpublished decisions for guidance.

Circuit has held that, as a matter of law, where a plaintiff has stated a prima facie case, his claims cannot be found to be frivolous or unreasonable. [Mem. in Opp. at 3 (citing Warren v. City of Carlsbad, 58 F.3d 439, 444-45 (9th Cir. 1995)) (some citations omitted).] Defendants argue that a finding that the plaintiff stated a prima facie case is only one factor to consider in determining whether a case is frivolous for purposes of § 3730(d)(4). [Reply at 2 (citing United States ex rel. Atkinson v. Penn. Shipbuilding Co., 528 F. Supp. 2d 533, 543-44 (E.D. Pa. 2007)) (some citations omitted).]

Warren was a Title VII discrimination case in which the district court granted summary judgment in favor of the defendants and imposed Federal Rule of Civil Procedure 11 sanctions on the plaintiff and an attorney who helped him with the case. See 58 F.3d at 440. The district court ruled that Warren's claim was "'clearly frivolous because plaintiff has submitted no evidence of discrimination other than his personal opinion . . . .'" Id. at 444. On appeal, the Ninth Circuit held that the district court erred in finding that Warren's claim was frivolous because he "made a prima facie showing of Title VII disparate treatment . . . . [and] raised additional facts that may point to a discriminatory motive for his rejection" for a promotion. Id. The Ninth Circuit's holding was based upon the following legal principles:

15

       We have previously held that a district court may impose monetary sanctions, in the form of attorneys' fees, upon plaintiffs who file Title VII claims that are "frivolous, unreasonable, or without foundation." See EEOC v. Bruno's Restaurant, 13 F.3d 285, 287 (9th Cir.1993) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)).  However, we specifically instructed that "[b]ecause Congress intended to 'promote the vigorous enforcement of the provisions of Title VII,' a district court must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be 'airtight.'"  Id. (quoting Christiansburg, 434 U.S. at 422, 98 S.Ct. at 700-701); see also EEOC v. Consolidated Serv. Sys., 30 F.3d 58, 59 (7th Cir.1994) (suggesting that the "frivolous" standard is much more stringent than merely "not substantially justified").  This same standard must apply to an assessment of Title VII claims under Rule 11, lest this Rule be used to thwart Congress's intent.  Courts must heed "the Supreme Court's warning in Christiansburg against the 'temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'"  Bruno's Restaurant, 13 F.3d at 290 (quoting Christiansburg, 434 U.S. at 421-22, 98 S.Ct. at 700-701); see also Forsberg v. Pacific Northwest Bell Tel. Co., 840 F.2d 1409, 1422 (9th Cir.1988) (applying the same "frivolous, unreasonable, or without foundation" standard to request for sanctions under Rule 11 and 42 U.S.C. § 2000e-5(k)).

Id.

       Cases applying Warren show that, although not controlling, a finding that a plaintiff has stated a prima facie case of discrimination weighs strongly against a subsequent finding that the case was frivolous.  See, e.g., Raad v. Fairbanks N. Star Borough, No. 04-35447, 2006 WL 2460847, at *3

(9th Cir. Aug. 24, 2006) (citing <u>Warren</u> as part of "substantial case law suggesting that a fee award for defendants is ordinarily improper in those circumstances"); <u>Wal-Mart Stores, Inc. v. City of Turlock</u>, 483 F. Supp. 2d 1023, 1028 (E.D. Cal. 2007) (citing <u>Warren</u> for the proposition that "a Title VII complaint that makes out a prima facie showing of disparate treatment but ultimately fails on the merits should not be deemed 'clearly frivolous'"); <u>Knadler v. Furth</u>, No. C04-01220 CRB, 2005 WL 2789223, at *2 (N.D. Cal. Oct. 26, 2005) ("Though not conclusive, a claim that makes out a *prima facie* case is normally not frivolous." (citing <u>Warren</u>)).

<u>Warren</u> is not controlling because the instant case is not a Title VII action.  The Court, however, notes that <u>Wal-Mart</u> involved a motion for attorney's fees under 42 U.S.C. § 1988. The court in <u>Wal-Mart</u> applied the same reasoning used in <u>Warren</u>, noting that courts should not discourage legitimate suits what are not "airtight" and should not "engage in post hoc reasoning by concluding" that a plaintiff's claim was unreasonable or unfounded just because he did not ultimately prevail on the merits.  <u>See</u> <u>Wal-Mart</u>, 438 F. Supp. 2d at 1028 (citing <u>Bruno's Restaurant</u>, 13 F.3d at 287, 290 (quoting <u>Christiansburg</u>, 434 U.S. at 421-22, 98 S.Ct. 694).

Insofar as case law involving awards of attorney's fees under § 1988 is instructive and because this Court agrees with

17

the Ninth Circuit's reasoning in <u>Warren</u>, this Court finds that a § 3730(d)(4) finding of frivolousness is likely inappropriate because the district judge ruled in the Third Dismissal Order that Plaintiffs stated a prima facie case for facially false claims.  To find otherwise would be to engage in the kind of *post hoc* reasoning that <u>Christiansburg</u> warns against.

First, Defendants argue that the Court should give little weight to the finding that Plaintiffs alleged a prima facie case because that finding only related to a narrow issue in the case and because, at the motion to dismiss stage, the district judge was required to accept Plaintiffs' factual allegations as true. Defendants primarily argue that Plaintiffs' claims were frivolous because they failed to investigate the nurses' license status and they had no support for their allegations that the contested procedures had to be supervised or were "physicians-only".

First, Defendants appear to assert that, because the district judge dismissed Plaintiffs' primary claims and only allowed them to proceed on a narrow issue, this Court should give little weight to the finding that they alleged a prima facie case.  Plaintiffs' false certification claim did involve far more claims than their claim based on the submission of facially false claims.  Defendants state that, under Plaintiffs' false certification theory, all of the claims that Defendants submitted would have been rendered false.  In contrast, Plaintiffs'

18

facially false claim theory left "'only' several hundred allegedly false UB-92s." [Reply at 15-16.]  Although the dismissal orders drastically narrowed the alleged false claims in this case, the remaining claim based on the submission of facially false claims involved a significant number of allegedly false claims that would have exposed Defendants to substantial financial liability.  Further, the mere fact that some of Plaintiffs' claims were dismissed for failure to plead fraud with particularity does not mean that the claims were frivolous.  See, e.g., United States ex rel. Rafizadeh v. Cont'l Common, Inc., –F.3d –, No. 06-30702, 2008 WL 5265188, at *3 (5th Cir. Dec. 19, 2008) (holding that the district court did not err in finding that the qui tam claim was not frivolous, even though the relator's allegations did not meet the Rule 9(b) standard, because he made a good faith argument that presentment was not required for 31 U.S.C. § 3729(a)(2) actions).  This Court therefore declines to focus the frivolousness inquiry on the claims that the district judge dismissed.  See, e.g., Montgomery, 2008 WL 110858, at *3 (declining to limit frivolousness inquiry to claims in the original complaint because, under the applicable law, the plaintiffs were entitled to amend their complaint).

    As noted supra, courts should only award attorney's fees under the FCA in rare and special circumstances.  Thus, a finding of frivolousness for purposes of § 3730(d)(4) should be

the exception rather than the rule.  Courts have awarded
attorney's fees where the plaintiff's *qui tam* fraud claim was
based on publicly disclosed information of which the plaintiff
was not the original source.  See, e.g., United States ex rel.
Bain v. Georgia Gulf Corp., No. 06-30304, 2006 WL 3093637, at *3
(5th Cir. Oct. 26, 2006); Martel v. Maxxam Inc., No. 99-20476,
2000 WL 329354 (5th Cir. March 23, 2000).  Courts have also
awarded attorney's fees where the government was aware of and
approved the defendant's allegedly fraudulent act.  See, e.g.,
United States ex rel. Haycock v. Hughes Aircraft Co., No. 94-
55620, 94-55826, 1996 WL 612680 (9th Cir. Oct. 21, 1996)
(affirming award of attorney's fees incurred after the relator
continued to litigate in spite of receiving declarations showing
that the relevant government officials knew of and approved the
allegedly fraudulent cost allocation system); United States ex
rel. J. Cooper & Assocs., Inc. v. Bernard Hodes, 422 F. Supp. 2d
225, 239 (D.D.C. 2006) (ruling claim frivolous because the
plaintiff filed suit knowing that the Immigration and
Naturalization Service was aware that the defendants were not
small or disadvantaged businesses);[6] United States ex rel.
Herbert v. Nat'l Acad. of Scis., Civ. A. No. 90-2568, 1992 WL

---

[6] The plaintiff in Cooper alleged that the defendants
violated the FCA by misrepresenting themselves as small or
disadvantaged businesses to obtain orders from the Immigration
and Naturalization Service to provide advertising and public
relations services.  See 422 F. Supp. 2d at 230.

247587 (D.D.C. Sept. 15, 1992) ("Herbert II"); see also United

States ex rel. Minna Ree Winer Children's Class Trust v. Regions

Bank of La., No. 96-30581, 1997 WL 119971, at *3 (5th Cir. March

13, 1997) (affirming district court's ruling that the ultimate

goal of the suit was to vex and harass the defendants because

their allegedly fraudulent property sale had been approved by the

FDIC).

In Herbert II, the plaintiff was part of a committee

that the defendant, the National Academy of Sciences ("NAS"),

formed to draft the tenth edition of the Recommended Dietary

Allowances ("RDA") in response to a government contract.  After

the committee failed to complete an acceptable version of the

RDA, the NAS entered into a new contract with the government to

complete the RDA.  The NAS used the committee's draft as a

starting point.  The plaintiff had previously filed a copyright

infringement action against the defendant ("Herbert I").  The

court dismissed it for lack of subject matter jurisdiction and

noted that the plaintiff's only remedy was to file an action

against the United States in the Claims Court.  Instead, the

plaintiff appealed Herbert I and filed the qui tam action based

on substantially the same facts.  See Herbert II, 1992 WL 247587

at *1-*2.  The plaintiff's fraud claim was negated by the fact

that the government was aware of the potential copyright claims

when it entered into the second contract, but still required the

NAS to use the committee's prior drafts.  This was the basis of the decision in <u>Herbert I</u>.  <u>See</u> <u>id.</u> at *8.  Thus, although not expressly stated in the decision, the district court in <u>Herbert II</u> apparently found the action to be clearly frivolous, which formed part of the basis for an award of attorney's fees pursuant to § 3730(d)(4).

Although these cases are factually dissimilar from the instant case, they illustrate the type of rare scenarios justifying a finding that a case is clearly frivolous.  A case that is more analogous to the instant case is <u>Mikes v. Straus</u>, 274 F.3d 687 (2d Cir. 2001).  Mikes claimed that the defendants violated Medicare statutes and the FCA by referring patients for unnecessary and/or inappropriate magnetic resonance imaging ("MRI") tests so that the defendants could receive remuneration for referrals to an MRI facility that they had a financial interest in.  The Second Circuit Court of Appeals affirmed the award of attorney's fees because the "plaintiff's allegations were bereft of any objective factual support [and] clearly had no chance of success."  <u>Mikes</u>, 274 F.3d at 705.  There was little incentive for the defendants to refer extra patients to the facility because their consulting agreement with the facility provided for a flat fee.  Moreover, there was no evidence that any Medicare patient received an inappropriate MRI.  The plaintiff's only example was a Mrs. D, but the plaintiff's

reliance on Mrs. D was not objectively reasonable because Mrs. D was in her late forties and thus was not Medicare eligible and could not support a violation of Medicare statutes.  See id. at 704-05.

In the present case, Defendants similarly argue that Plaintiffs' claim based on the submission of facially false claims and costs reports was wholly without merit.  Defendants argue that, if Plaintiffs had conducted even a cursory investigation into the nurses' license status, they would have known that the nurses were properly licensed.  Plaintiffs argue that they had factual support for their allegations that Defendants' nurses did not have the proper credentials to perform unsupervised procedures.  Plaintiffs point to the Voluntary Disclosure, which was signed by Sharon On Leng, Esq., Defendants' general counsel, and Dennis Warren, Esq., Defendants' compliance attorney.  The Voluntary Disclosure discusses, *inter alia*, billing for certain invasive procedures performed by nurse practitioners.  It states:

> Although this Disclosure document refers to nurse Dianne Fochtman as the HemOnc "nurse practitioner," the current investigation discovered that she failed to complete one or more requirements necessary to be licensed in Hawaii in that license category.  A nurse practitioner is, under Hawaii law, a specialty category of an "advanced practice registered nurse."  As a result, Fochtman was acting, during all or part of the time period covered by this Disclosure, as a nurse practitioner when, in fact, she was licensed *only* as a registered nurse.

23

[Voluntary Disclosure at A-0018 (emphasis in original).]   The district judge noted the statements in the Voluntary Disclosure, but discounted them, stating that it "appears to conflate APRN-status under Hawaii law with that of a nurse practitioner and uses the terms interchangeably . . . .   In any event, the court is not bound by Warren's legal conclusions regarding the status of the nurse practitioners."  [Summary Judgment Order at 20 n.9.]

In addition, during her deposition, Ms. On Leng also discussed the fact that Nurse Fochtman did not have a license.

> Q.  . . . . Did you call any government authorities or, or notify any government authorities about the, the fact that Diane hadn't had a license?
> A.   I might have talked to the administrative, I forget what they're called, executive officer for the board to inquire about getting licensure, but I don't specifically remember whether I did that or not.

[Exh. 27 to Pltfs' Separate Concise Statement of Facts in Supp. of Pltfs' Mem. in Opp. to Defs' Motion for Summary Judgment, filed on 2/28/08 (dkt. no. 219-32), March 17, 2006 Depo. of Sharon On Leng, at 168.]

Thus, although the district judge ultimately found that the nurses were properly licensed, Plaintiffs could have reasonably relied on this evidence in arguing that the nurses were unlicensed.  This Court cannot find that Plaintiffs' allegation was wholly without merit.

Defendants also argue that Plaintiffs had no factual

support for their allegation that some of the procedures that the nurses performed were "physician-only" procedures.  Plaintiffs each submitted declarations supporting their opposition to Defendants' Motion for Summary Judgment and they asserted, *inter alia*, that certain procedures were "physician-only".  Plaintiffs argue that, in light of their professional experience and other credentials, they were qualified to provide such evidence.  They also argue the report of their expert, Claudia Birkenshaw, supported their position, but the district judge found that the report was insufficient evidence for summary judgment purposes.

In addition, this Court notes that on March 15, 2008, Plaintiffs filed a Motion for Order to Enforce Subpoena for Oral Deposition of Non-party Lynette Honbo, M.D. ("Honbo Motion"). Plaintiffs sought Dr. Honbo's information or opinion on Medicaid's receipt of the UB-92s at issue in this case because she was the Medicaid Medical Director during the relevant period. The Honbo Motion argued, *inter alia*, that Dr. Honbo could testify about the meaning of using physician-only codes in the UB-92s. Dr. Honbo gave deposition testimony in April 2006 in a state court action between substantially the same parties as those in the instant case, <u>Woodruff, et al. v. Hawai`i Pacific Health, et al.</u>, Civil No. 02-1-0090-01 ("the State Action").[7]  This Court

---

[7] Dr. Woodruff was the original plaintiffs in the State Action, she later amended the complaint to add HCBCG as a
(continued...)

denied the Honbo Motion on the ground that Dr. Honbo either would be available to testify at trial or would submit to a deposition for trial preservation if she was not available.  [Minute Order, filed 4/22/08 (dkt. no. 271).]  Thus, although Plaintiffs were not able to use her testimony in their opposition to Defendants' Motion for Summary Judgment, Dr. Honbo's anticipated testimony could have provided some support for Plaintiffs' allegations that certain procedures were "physician-only".  This Court cannot find that Plaintiffs' allegation was wholly without merit.

This Court therefore FINDS that Plaintiffs' action was not clearly frivolous for purposes of § 3740(d)(4).

## II.   <u>Clearly Vexatious or Brought Primarily to Harass</u>

An action is "'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant."  <u>Pfingston</u>, 284 F.3d at 1006. Defendants allege that Plaintiffs "seem to be acting out of a desire for revenge against Defendants" and that they "embarked on this course of litigation determined to demonstrate that if they were precluded from billing for their professional fees for procedures performed by nurse practitioners, then the hospital should be barred from recovering its costs for these procedures."

------

[7](...continued)
plaintiff.  As noted previously, HCBCG is a medical group consisting of Dr. Woodruff and Dr. Wilkinson.

[Mem. in Supp. of Motion at 11.]

First, the Court notes that Defendants point to no evidence that Plaintiffs' primary intent in bringing this action was a desire for revenge against Defendants.  Defendants cite Millner v. ITT Aerospace/Commc'ns Div. of ITT Corp., No. 95-3545, 1997 WL 415238, at *6 (7th Cir. July 21, 1997), which Defendants summarize as follows:

> the court awarded attorneys' fees and expenses under section 3740(d)(4), where the plaintiff "pursued a pattern of conduct calculated to harass [defendant] and cause it as much harm as possible."  This pattern included the plaintiff picketing the defendant [for over fifteen weeks], conducting a defamatory letter-writing campaign, filing baseless charges with the NLRB and EEOC, then filing a *qui tam* action, and admitting in his deposition that he would continue to purse defendant in any way he could.

[Id. at 10-11 (citing Millner, 1997 WL 415238, at *6) (some alterations in original).]  Millner does not support Defendants' position because they have not pointed to any actions by Plaintiffs that even approach the plaintiff's conduct in Millner.

This Court also notes that there are other cases denying attorney's fees in spite of stronger evidence of vexatiousness or intent to harass than in the instant case.  See, e.g., Haight, 2008 WL 607150; Montgomery, 2008 WL 110858.  In Haight, the court ruled that the plaintiffs' pre-litigation activities, which included picketing the defendants' place of business, conducting press conferences and letter writing

27

campaigns to stop the defendants' use of animals in medical research, and petitioning for the county sheriff's office to file animal cruelty charges against one of the defendants, showed that they filed the action to advance a social agenda.  The district court, however, found that this was not the plaintiff's **primary** purpose over asserting meritorious claims that could have resulted in a sizable award.  See id. at *1-*2.  In Montgomery, the district court stated that "[n]o one disputes that there was bad blood between the parties."  See 2008 WL 110858, at *5.  The court also recognized that one of the plaintiffs, Dr. Harrison, appeared to have a personal motivation to pursue the case. Dr. Harrison helped the other plaintiff, Paul Montgomery, in a successful medical malpractice action against one of the defendants, Dr. McCoy.  Dr. Harrison made complaints about Dr. McCoy to hospital officials and he was allegedly rebuffed by hospital officials because he refused to send his patients to Dr. McCoy.  He also was instrumental in encouraging federal and state investigations of Dr. McCoy.  Both plaintiffs, however, submitted affidavits stating that the action was not motivated by personal grudges or animosity and that they wanted to stop Dr. McCoy from harming others.  The district court therefore rejected Dr. McCoy's argument that Dr. Harrison was using the action to vindicate a personal grievance and found that Dr. Harrison had not filed the action in subjective bad faith.  See id. at *5.

28

There is clearly bad blood between the parties.
Defendants, not doubt, believe Plaintiffs' litigious behavior to
be vexatious and feel Plaintiffs are harassing them.   However,
Plaintiffs' personal stake in the instant case pales in
comparison to the plaintiffs' personal motivation in the <u>Millner</u>
and <u>Haight</u> cases.   This Court therefore cannot conclude that
Plaintiffs' actions outside of the instant case indicate that
this case was clearly vexatious or brought primarily for
harassment.

In addition,

> Evidence of vexatiousness or an intent to harass
> on the part of a plaintiff includes, but is not
> limited to, actions that deliberately delay the
> proceedings, attempts to relitigate a previously
> decided claim against the same defendant, the
> raising of new allegations in an effort to
> circumvent the arguments in a defendant's motion
> to dismiss, <u>Herbert [II]</u>, 1992 WL 247587, at *8,
> and the inclusion of counts for which the
> available evidence "defeat[s] any inference of a
> false claim." <u>Mikes</u>, 98 F.Supp.2d at 527.

<u>Cooper</u>, 422 F. Supp. 2d at 238 (some citations omitted, some
alterations in original).   Defendants do not appear to allege
that Plaintiffs deliberately delayed the proceedings in this
action, and this Court finds that Plaintiff did not deliberately
delay the proceedings.   Defendants note that Plaintiffs have
filed two other actions, the State Action, and <u>Hawaii Children's</u>
<u>Blood and Cancer Group v. Hawai`i Pacific Health, et al.</u>, CV 03-
00708 SOM-LEK ("the Federal Antitrust Action").   Defendants argue

29

that the Federal Antitrust Action is based upon the same nucleus of facts as the State Action.  In fact, the Second Amended Complaint in the State Action,[8] filed on February 17, 2005, purportedly consolidated the complaint in the State Action with the complaint in the Federal Antitrust Action.  The crux of the State Action and the Federal Antitrust Action is that Defendants allegedly attempted to secure a monopoly of clinical pediatric hematology-oncology ("hem-onc") physician services in Hawaii by, *inter alia*, excluding HCBCG physicians from that market.  Thus, the instant case is not based upon the same facts, and does not assert the claims, as the State Action and the Federal Antitrust Action.  In making this finding, this Court expresses no opinion on the issue whether Defendants would be entitled to an award of attorney's fees if they prevail in the Federal Antitrust Action.

Further, the mere fact that this is the third case between virtually the same parties does not render the case clearly vexatious.  The key issue is whether the allegedly vexatious action raised issues that had already been litigated. For example, in <u>Rafizadeh</u>, 2008 WL 5265188, the defendants argued that the action was clearly vexatious because it was the fourth suit between the parties.  Although the second amended complaint

---

[8] The Second Amended Complaint in the State Action is attached as Exhibit I to Defendants' Concise Statement of Facts, filed October 31, 2008 (dkt. no. 157-13), in the Federal Antitrust Action.

only alleged a *qui tam* action that had not been previously litigated, early versions of the complaint raised issues that had been previously litigated.  See Rafizadeh, 2008 WL 5265188, at *3.  The Fifth Circuit Court of Appeals affirmed the denial of attorney's fees stating, "[t]he district court is better suited than are we to determine whether these additional allegations so inflated the costs of litigation as to constitute harassment." Id.  The instant case is separate and distinct from the State Action and the Federal Antitrust Action.  This Court finds that the mere fact that this is the third case that Plaintiffs brought against Defendants does not render the instant case clearly vexatious or primarily harassment.

Finally, Defendants argue that

> Plaintiffs persistently failed to explain the basis for their lawsuit, and, in fact, often contradicted themselves in their briefs, declarations, and deposition testimony.  In addition, Plaintiffs' theories of liability morphed throughout the litigation from being based on the nurses' purported lack of license, to arguing that a physician needed to perform the procedures, to arguing that supervision was required and thus the reason for liability, to arguing that hospital credentialing was required and thus the reason for liability.  Plaintiffs' conduct indicates that they brought this action to vex and harass Defendants.

[Mem. in Supp. of Motion at 12-13.]  Defendants argue that the instant case is therefore similar to Herbert II.  The Court in that case noted that:

A common theme running through Plaintiff's cases

31

> has been a persistent failure to definitively
> state the legal bases of his claims.  Each time
> the defendant mounts a defense to the claims
> against it, the Plaintiff responds by heaping some
> new allegation of wrongdoing or some new theory of
> the case onto the pile.

<u>Herbert II</u>, 1992 WL 247587, at *8.

At the end of the day, Plaintiffs argue that the basis of this action was that "Defendants had submitted UB-92 claims for procedures **performed unsupervised** by nurses who were **not properly licensed** to perform them unsupervised."  [Mem. in Opp. at 7 (emphases in original).]  The district judge's First Dismissal Order noted that Plaintiffs' stated in their memorandum in opposition to the motion to dismiss that "the false claims were charges connected with procedures performed by unsupervised and unlicensed nurses, and improperly billed to the government." [First Dismissal Order at 6.]  Thus, while inarticulately pled, Plaintiffs' basic allegations in this case have been fairly consistent throughout.  This is not the type of case where the plaintiff introduces a new allegation in order to avoid the defendant's defense to the original claim.

Having considered the history of this case and all of the relevant legal considerations, this Court finds that the instant case was not clearly vexatious, nor was it brought primarily to harass Defendants.  This Court therefore FINDS that Defendants are not entitled to attorney's fees and expenses under 31 U.S.C. § 3740(d)(4).

32

## CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, FINDS and RECOMMENDS that Defendants' Motion for Attorneys' Fees and Expenses, filed on May 16, 2008, be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, February 9, 2009.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

UNITED STATES OF AMERICA EX REL. KELLY A. WOODRUFF, M.D., ET AL. V. HAWAII PACIFIC HEALTH, ET AL.; CIVIL NO. 05-00521 JMS-LEK; REPORT OF SPECIAL MASTER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES